Robert A. Mosier (State Bar Number 023375)
rmosier@thesandersfirm.com
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive, Suite 220
Irvine, California 92606
Telephone: (877) 480-9142
Facsimile:  (213) 477-2120

Eric H. Gibbs (*pro hac vice to be submitted*)
ehg@classlawgroup.com
David M. Berger (*pro hac vice to be submitted*)
dmb@classlawgroup.com
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Reader, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>　　　v.<br><br>Banner Health,<br><br>　　　　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Reader, on behalf of a class of herself and all others similarly situated, alleges the following against Defendant Banner Health:

## INTRODUCTION

1. On August 3, 2016, Defendant Banner Health announced that hackers had infiltrated their systems and compromised a broad spectrum of personal information, affecting over 3.7 million individuals. Because Banner failed to implement reasonable cybersecurity measures, the hackers were able to target and access payment card data at Banner food and beverage outlets, such as cardholder names, card numbers, expiration dates, and verification codes. But the hackers also infiltrated the computer systems where Banner stored its customers' most private (and valuable) information, including their personal health details, Social Security numbers, health insurance information, financial information, names, birthdates, and addresses. Banner's cybersecurity was so inadequate that the hackers even accessed the systems that stored information on Banner's healthcare providers, including their Drug Enforcement Agency numbers, Tax Identification numbers, National Provider Identifiers, and Social Security numbers.

2. Banner claims that the breach began on June 17, 2016, and that it failed to detect that hackers had accessed its payment card systems until July 7, 2016. It also claims that it did not detect the compromise of patient and employee information until July 13, 2016. Even then, Banner did not publicly disclose the breach until August 3, 2016 and still has not notified all those affected.

3. The personal information of Banner customers and healthcare providers has been exposed—and their identities put at risk—because Banner failed to maintain reasonable and adequate security measures. Despite having legal and moral obligations to protect the vast amounts of extremely sensitive and valuable personal information it stored, Banner repeatedly failed to prevent, detect, or limit the scope of this breach. Among other things, Banner (1) failed to implement adequate security measures to prevent hackers from infiltrating its systems; (2) failed to employ adequate security tools and techniques to detect unauthorized network activity or failed to respond to indicators

CLASS ACTION COMPLAINT
CASE NO.

of compromise; and (3) failed to adequately segment its networks, which would have limited the hackers' ability to access the various systems and data warehouses within Banner's computer networks.

4.     Plaintiff is a former Banner patient who received a letter from Banner informing her that her personal information was involved in the breach.  She brings this action on behalf of herself and all those whose personal information has been compromised as a result of the data breach.  She seeks injunctive relief requiring Banner to implement and maintain adequate security practices, to comply with laws, regulations, and industry standards designed to prevent, detect, and mitigate, this type of breach, as well as restitution, damages, and other relief.

## PARTIES

5.     Plaintiff Jane Reader is a citizen and resident of Pinal County, Arizona.

6.     Defendant Banner Health is an Arizona corporation with its principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and members of the proposed class are residents of different states.

8.     This Court has jurisdiction over Defendant Banner Health because Banner is incorporated in Arizona, is registered to conduct business in Arizona, has sufficient minimum contacts in Arizona, and otherwise intentionally avails itself of the markets in Arizona such that the exercise of jurisdiction by this Court is proper and necessary.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

/ / /

/ / /

CLASS ACTION COMPLAINT
CASE NO.

## FACTS

### Defendant Banner Health

10.     Defendant Banner Health is a Phoenix-based health system that operates 29 hospitals and other related health entities in the Western United States, with operations in Alaska, Arizona, California, Colorado, Nebraska, Nevada, and Wyoming.  Banner Health is Arizona's largest health system and largest private employer.

### The Data Breach

11.     On August 3, 2016, Banner announced that hackers had breached its network and accessed the personal information of patients, health plan members, customers, and employees.  Hackers targeted payment card data in the payment processing systems at Banner food and beverage outlets, where they accessed cardholder names, card numbers, expiration dates, and internal verification codes.

12.     Hackers were also able to access the computer servers where Banner stored the personal information of its patients and health plan members, including their names, birthdates, addresses, physicians' names, dates of service, claims information, clinical information, health insurance information, and Social Security numbers.  The data breach also included the information of Banner's physicians and healthcare providers, such as their names, addresses, birthdates, Drug Enforcement Agency numbers, Tax Identification numbers, National Provider Identifiers, and Social Security numbers.

13.     According to Banner, the data breach began on June 17, 2016, but Banner did not notice that its payment processing systems had been accessed until July 7, 2016. It was not until July 13, 2016 that Banner realized the hackers had gone on to access patient, health plan member, and physician information.  Banner Health spokesman Bill Byron stated that the company "is still in the process of trying to determine what the scope is."

14.     Banner has not yet notified all affected patients and plan members about the breach.  It has mailed letters out to some patients, including Plaintiff Reader, but its website also instructs those who are potentially affected that they should contact its call

CLASS ACTION COMPLAINT
CASE NO.

center only if they do not receive a letter before September 9, 2016.  As a result, many class members are unaware that their personal information has been compromised and will not timely take the steps necessary to safeguard themselves from improper use of that information.

### Banner's Security Practices are Inadequate

15.    Health care providers are frequently the target of data breaches because their networks store large amounts of sensitive personal information.

16.    The threat of data breaches to the healthcare industry has only increased in recent years, as large breaches of health insurers like Anthem, Premera, and Excellus, and breaches at UCLA Health and 21st Century Oncology have filled the news.  A recent Raytheon study found that healthcare organizations are twice as likely to suffer a data breach than organizations in other industries.  Despite heightened awareness of these problems, a 2016 report by the Ponemon Institute describes how healthcare budgets for security have either dropped or remained the same in the past year.  According to the report, data breaches have cost the healthcare industry $6.2 billion annually.

17.    Health care providers are frequently the target of data breaches because their networks store large amounts of sensitive personal information. Health care data is especially valuable on the black market and businesses that store such information are therefore likely to be targeted by cybercriminals. Information maintained by health care companies – such as date of birth and Social Security number – are not easily destroyed and can be used to perpetrate identify theft and other types of frauds.  Medical information is highly valuable and is reportedly "worth 10 times more than [a person's] credit card number on the black market." According to a security expert, patient medical records can sell for hundreds at black market auctions.

18.    According to industry experts, "cyber criminals are increasingly targeting the $3 trillion U.S. healthcare industry, which has many companies still reliant on aging computer systems that do not use the latest security features." Daniel Nutkis, the chief executive of the Health Information Trust Alliance, a healthcare industry group that

CLASS ACTION COMPLAINT
CASE NO.

works with companies to improve data security, stated that "the industry has become, over the last three years, a much bigger target."

19.    On April 8, 2014, the Federal Bureau of Investigation issued a Private Industry Notification to healthcare providers, warning them that their cybersecurity systems are inadequate.  According to the notification, "[t]he healthcare industry is not as resilient to cyber intrusions compared to the financial and retail sectors, therefore the possibility of increased cyber intrusions is likely." The FBI notification also cites a report prepared by the SANS Institute that warned that the healthcare industry was not sufficiently prepared to combat data breaches. The SANS Health Care Cyber Threat Report analyzed data collected between September 2012 and 2013 and found the results to be "alarming." The report explained that "[t]he data not only confirmed how vulnerable the industry had become, it also revealed how far behind industry-related cybersecurity strategies and controls have fallen."  In August 2014 – after Community Health Systems, Inc. experienced a data breach – the FBI also warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."

20.    Banner has a history of failing to protect its customers' personal information, particularly Social Security numbers.  In 2014, Banner exposed the Medicare identification and Social Security numbers of more than 50,000 people to public view.  According to a spokesperson, the error was caused by a problem with how Banner handled mailing lists for its quarterly magazine.  But using sensitive information, like Social Security numbers to organize mailing lists reveals a culture of recklessly disregarding data security concerns.

21.    One method of data security is network segmentation.  Described by a 2015 Raytheon white paper as a "fundamental security control," network segmentation involves splitting a computer network into subnetworks and securing the links between

those subnetworks.  Effective network segmentation prevents a hacker who infiltrates one section of a network from reaching other sections.  Network segmentation is especially critical in the healthcare industry where point of sale systems consist of 48 percent of assets compromised in data breaches according to a 2012 Verizon study.  Adrian Sanabri, an analyst at an information security firm 451 Research LLC, stated that Banner's food services systems should have been "entirely segregated" from its medical records and payment data systems.

22.    Logging and monitoring is another key element of data security.  Security experts have increasingly emphasized the need to reduce what is commonly called "dwell time," the period in which hackers can explore networks before being detected and eliminated by the security team.  When consumer information is involved, delays in detection can allow hackers to locate and compromise far more data than otherwise. Network monitoring and alert systems can detect unusual activity or failures and alert IT security personnel to take appropriate action.

23.    In the health care industry, encryption and implementing effective access controls remain one of the most important security measures of all.  For example, the United States Department of Health and Human Services' Office for Civil Rights ("OCR") urges health care providers and insurers to encrypt data containing sensitive personal information and has fined health plans for failing to encrypt this information. Here, Banner failed to properly encrypt or effectively restrict access to its key data warehouses.  These are easily implemented and relatively inexpensive precautions that would have prevented or dramatically limited the scope of this data breach.

24.    Despite the warnings about the importance of data security in the health care field, Banner (1) failed to implement security measures designed to prevent the data breach, even though the health care industry had been repeatedly warned; (2) failed to employ security protocols to detect the unauthorized network activity; and (3) failed to adequately segment its networks, such that a breach of the payment processing system

CLASS ACTION COMPLAINT
CASE NO.

did not result in a breach of patient data, and failed to implement effective encryption and access controls.

**Banner's Privacy Policy**

25.     At all relevant times, Banner had privacy policies committing to maintain and protect the confidentiality of information that Banner and its affiliates collected from customers in the course of doing business, including personal and health-related information.

26.     Since at least September 2013, Banner has had a "Notice of Privacy Practices" advising its patients and members that it was "committed to protecting the confidentiality of information about you."   This notice, incorporated in Banner's registration forms, advised Banner patients and members of a limited set of situations in which the personal information of patients and members could be disclosed, including for research, operational, public safety, and other express reasons.  According to the policy, "[o]ther uses and disclosures not described in this Notice will be made only with your written authorization . . . "

27.     Banner provided documents containing this notice and made the notice available online to all proposed class members at the time when they registered for treatment, paid premiums for health coverage, or decided to work at Banner.

**Banner Patients, Members, Physicians and Customers are Victims**

28.     As a result of Banner's negligent security practices and delay in notifying affected individuals, Banner patients, health plan members, employees, and customers are subject to an imminent risk of identity theft based on Banner's exposure of their personal information.

29.     Banner patients, members, employees, and customers will have to spend time and money securing their personal information and protecting their identities.  They will need to monitor their accounts and credit, and will have to pay for credit monitoring or credit reports in the wake of the data breach to make sure their credit and identity is

7

CLASS ACTION COMPLAINT
CASE NO.

1    not harmed by anyone who may have stolen their information.  This is particularly

2    important, given the inadequate remedial credit monitoring offered by Banner and the

3    short duration of that service.  Those whose payment cards were compromised may have

4    to pay fees to their banks for new debit and credit cards, or have to pay fees to have the

5    cards shipped faster so that they do not have to wait weeks to make purchases on their

6    accounts. Payment card information often is quickly distributed through private criminal

7    networks or sold on black market web forums on the so-called "Dark Web" to facilitate

8    credit card fraud.

9        30.    The disclosure of Social Security numbers and the corroborating personal

10   information that makes it trivial to use Social Security numbers to commit identity theft

11   poses significant, long-term risks.  Criminals can use Social Security numbers to create

12   false bank accounts or file fraudulent tax returns.  Because information, including Social

13   Security numbers and dates of birth, never change, identity thieves often hold onto this

14   information, using it to commit fraud after free credit monitoring programs expire.  With

15   the accompanying demographic information, they also may target vulnerable populations,

16   like children and the elderly, who are less likely to notice identify theft.  Banner patients,

17   members, and employees whose Social Security numbers have been compromised have

18   and will have to continue spending time contacting various agencies, such as the Internal

19   Revenue Service, Social Security Administration, and their local state tax boards.  They

20   also face a real and immediate risk of identity theft and other problems associated with

21   the disclosure of their Social Security number, and will need to monitor their credit ant

22   tax filings for an indefinite time.  Generally, individuals cannot even obtain a new Social

23   Security number *until* evidence of ongoing problems caused by misuse already exists.

24   Even then, the Social Security Administration warns that "a new number probably will

25   not solve all [ ] problems . . . and will not guarantee [ ] a fresh start."  For some victims of

26   identity theft, "a new number actually creates new problems."

27

28

CLASS ACTION COMPLAINT
CASE NO.

31.     The hackers were also able to compromise the personal health information Banner stored, which can be used to commit medical identity theft, a growing and lucrative criminal enterprise.

32.     Finally, information on medical providers is particularly useful to a subset of specialized criminals.   These criminals can impersonate the medical providers, file false claims, and obtain prescription drugs.   Affected providers can find themselves the targets of civil and criminal investigations into health care fraud and may have their licenses suspended during the course of the review.

## PLAINTIFF READER'S EXPERIENCE

33.     Plaintiff Jane Reader is a resident of Maricopa, Arizona.   Because she was a Banner patient in approximately 2013-2014, Banner obtained her sensitive personal information.

34.     Plaintiff Reader received a letter from Banner informing her that her personal information may have been breached, including her name, birthdate, address, physician's name, clinical information, and Social Security number.

35.     The Banner data breach has compromised the personal data of Plaintiff Reader.   Due to Banner's conduct, she is now at a heightened risk for future identity theft.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the classes preliminarily defined as:

Nationwide Class: *All individuals in the United States whose personal information was compromised as a result of the Banner data breach announced in August 2016.*

Arizona Subclass: *All individuals in Arizona whose personal information was compromised as a result of the Banner data breach announced in August 2016.*

Arizona Contract Class: *All patients, health plan members, and healthcare providers in Arizona whose personal information was compromised as a result of the Banner data breach announced in August 2016.*

CLASS ACTION COMPLAINT
CASE NO.

Excluded from the proposed classes is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; and any judge to whom this case is assigned, his or her spouse, and members of the judge's staff.

37.    Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Rule 23.

38.    <u>Numerosity</u>.  The proposed classes consist of tens of millions of former or current Banner health insurance plan members and employees who had their data stolen in the Banner data breach, making joinder of each individual class member impracticable.

39.    <u>Commonality</u>.  Common questions of law and fact exist for the proposed classes' claims and predominate over questions affecting only individual class members. Common questions include:

      a.    Whether Banner owed a duty to Plaintiff and members of the proposed classes to take reasonable measures to safeguard their personal information;

      b.    Whether Banner knew or should have known that its cybersecurity systems were vulnerable to a data breach;

      c.    Whether Banner breached its legal duties in allowing its cybersecurity systems to be compromised;

      d.    Whether Banner owed a duty to Plaintiff and members of the proposed classes to provide timely and adequate notice of the data breach;

      e.    Whether Banner breached its contractual promises to adequately protect class members' personal information;

      f.    Whether Banner's failure to implement adequate security constitutes an unfair, unlawful, or deceptive practice under state consumer protection law;

CLASS ACTION COMPLAINT
CASE NO.

g.      Whether class members may obtain damages, restitution, declaratory, and injunctive relief against Banner; and

h.      What security procedures and data-breach notification procedure Banner should be required to implement as part of any injunctive relief ordered by the Court.

40.     <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the proposed classes because, among other things, Plaintiff and class members sustained similar injuries as a result of Banner's uniform wrongful conduct and their legal claims all arise from the same core Banner practices.

41.     <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the classes.  Her interests do not conflict with class members' interests and she has retained counsel experienced in complex class action and data privacy litigation to vigorously prosecute this action on behalf of the classes.

42.     In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual class members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Banner's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

43.     In addition, class certification is appropriate under Rule 23(b)(1) or (b)(2) because:

a.      the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying

CLASS ACTION COMPLAINT
CASE NO.

adjudication which would establish incompatible standards of
conduct for Banner;

b.    the prosecution of separate actions by individual class members
would create a risk of adjudications with respect to them which
would, as a practical matter, be dispositive of the interests of other
class members not parties to the adjudications, or substantially
impair or impede their ability to protect their interests; and

c.    Banner has acted or refused to act on grounds that apply generally to
the proposed classes, thereby making final injunctive relief or
declaratory relief described herein appropriate with respect to the
proposed classes as a whole.

### FIRST CAUSE OF ACTION

### Violations of the Arizona Consumer Fraud Act,

### A.R.S. § 44-1521, *et seq.*

44.    Plaintiff incorporates the above allegations by reference.

45.    Plaintiff brings this cause of action on behalf of herself and the proposed
Arizona Subclass whose personal information was compromised as a result of the data
breach publicized in August 2016.

46.    Defendant Banner Health engaged in deceptive and unfair acts and
practices, misrepresentation, and the concealment, suppression, and omission of material
facts in connection with the sale and advertisement of  "merchandise" (as defined in the
Arizona Consumer Fraud Act, A.R.S. §44-1521(5))  in violation of A.R.S. §44-1522(A),
including but not limited to the following:

a.    Banner misrepresented material facts to Plaintiff and members of the
proposed classes in connection with the sale of healthcare services,
food services, and medical provider services by representing that
they would maintain adequate data privacy and security practices
and procedures to safeguard the personal information of Plaintiff and

CLASS ACTION COMPLAINT
CASE NO.

proposed class members from unauthorized disclosure, release, data breaches, and theft;

b.   Banner misrepresented material facts to Plaintiff and members of the proposed classes in connection with the sale of healthcare services, food services, and employment by representing that they did and would comply with relevant federal and state laws pertaining to the privacy and security of the personal information of Plaintiff and proposed class members;

c.   Banner omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for the personal information of Plaintiff and proposed class members, with the intent that others rely on the omission, suppression, and concealment;

d.   Banner engaged in unfair acts and practices, in connection with the sale of healthcare services, food services, and medical provider services by failing to maintain the privacy and security of the personal information of Plaintiff and proposed class members, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Banner data breach.  These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d et. seq.), the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the Arizona Insurance Information and Privacy Protection Act (A.R.S. §20-2113).

e.   Banner engaged in unfair acts and practices in connection with the sale of healthcare services, food services, and medical provider services by failing to disclose the Banner data breach to Plaintiff and proposed class members in a timely and accurate manner, in violation of Ariz. Rev. Stat. § 44-7501.

13

CLASS ACTION COMPLAINT
CASE NO.

f.   Banner engaged in unfair acts and practices in connection with the sale of healthcare services, food services, and medical provider services by failing to take proper action following the Banner data breach to enact adequate privacy and security measures and the personal information of Plaintiff and proposed class members from further unauthorized disclosure, release, data breaches, and theft.

47.   The above unfair and deceptive practices and acts by Defendant Banner Health were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers like Plaintiff and members of the proposed class that could not be reasonably avoided; this substantial injury outweighed any benefits to consumers or to competition.

48.   Banner knew or should have known that their computer systems and data security practices were inadequate to safeguard the personal information of Plaintiff and members of the proposed class and that risk of a data breach or theft was highly likely. Banner's actions in engaging in the above-named unfair practices and deceptive acts was negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and proposed class members.

49.   As a direct and proximate result of Banner's unlawful practices, Plaintiff and members of the proposed class suffered injury and/or damages.

50.   Plaintiff, on behalf of herself and members of the proposed class, seeks relief under A.R.S. § 4421, *et. seq.*, including, but not limited to, compensatory damages, injunctive relief, and/or attorneys' fees and costs.

## <u>SECOND CAUSE OF ACTION</u>

### Breach of Contract

51.   Plaintiff incorporates the above allegations by reference.

52.   Plaintiff brings this cause of action on behalf of herself and the proposed Arizona Contract Class whose personal information was compromised as a result of the data breach publicized in August 2016.

CLASS ACTION COMPLAINT
CASE NO.

53.     Banner's privacy policy promises that the company protects "the confidentiality of information about you."  Banner's privacy policies constitute an agreement between (1) Banner and (2) its patients and health plan members.

54.     Banner has breached its agreement with Arizona Contract Class members to protect their personal information by (1) failing to implement security measures designed to prevent this data breach even though the health care industry has been repeatedly warned about the risks, (2) failing to employ security protocols to detect the unauthorized network activity, and (3) failing to adequately segment its networks.

55.     As a result of Banner's breach of contract, Plaintiff and proposed class members did not receive the full benefit of the bargain and instead received healthcare services or coverage that was less valuable than what was described in their contracts. Plaintiffs and the proposed class members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Banner's partial, deficient, and/or defective performance.

56.     Also as a result of Banner's breach of contract, Plaintiff and proposed class members have suffered actual damages resulting from the theft of their personal information.  Plaintiff and proposed class members face an imminent and increased risk of future identity theft and fraudulent activity on their financial accounts.

57.     Additionally, Plaintiff and proposed class members have suffered actual damages resulting from their efforts to ameliorate the effect of the breach of contract and subsequent data breach, including  purchasing credit monitoring services or taking other steps to protect themselves that they would not otherwise had to but for Banner's unlawful and unfair conduct.

58.     Plaintiff, individually and on behalf of the members of the proposed Arizona Contract Class, seeks (a) damages suffered by members of the class, (b) equitable relief, and (c) injunctive relief requiring Banner to implement safeguards consistent with its contractual promises.

59.     Plaintiff, individually and on behalf of the members of the class, also seeks reasonable attorneys' fees and costs under applicable law.

### THIRD CAUSE OF ACTION

### Negligence

60.     Plaintiff incorporates the above allegations by reference.

61.     Plaintiff brings this cause of action on behalf of herself and the proposed Nationwide Class whose personal information was compromised as a result of the data breach publicized in August 2016.

62.     In collecting the personal information of its patients, health plan members, customers, and employees, Banner owed Plaintiff and members of the class a duty to exercise reasonable care in safeguarding and protecting that information.  This duty included, among other things, maintaining and testing Banner security systems and taking other reasonable security measures to protect and adequately secure the personal data of Plaintiff and the class from unauthorized access and use.  Banner's security system and procedures for handling the personal information of its current and former health insurance plan members and employees were intended to affect Plaintiff and the class. Banner was aware that by taking such sensitive information, it had a responsibility to take reasonable security measures to protect the data from being stolen and, in the event of theft, easily accessed.

63.     The duty Banner owed to Plaintiff and members of the class to protect their personal information is also underscored by HIPAA, which recognizes the importance of maintaining the confidentiality of personal information and was established to protect individuals from improper disclosure of their personal information.

64.     There is a very close connection between Banner's failure to take reasonable security standards to protect its patients', health plan members', customers', and employees' data and the injury to Plaintiff and the class.  When individuals have their personal information stolen, they are at risk for identity theft, and need to buy credit monitoring services and purchase credit reports to protect themselves from identity theft.

CLASS ACTION COMPLAINT
CASE NO.

65.     It was foreseeable that if Banner did not take reasonable security measures, the data of Plaintiff and members of the class would be stolen.  Major corporations, particularly those in the healthcare industry, like Banner, face a higher threat of security breaches than other companies due in part to the large amounts and type of data they possess.  Banner should have known to take precautions to secure its health plan members' and employees' data, especially in light of recent data breaches and warnings regarding network vulnerability in the healthcare industry.

66.     Banner breached its duty to exercise reasonable care in protecting the personal information of Plaintiff and the class by failing to implement and maintain adequate security measures to safeguard its patients', health plan members', customers', and employees' personal information, failing to monitor its systems to identify suspicious activity, and allowing unauthorized access to the personal information of Plaintiff and the class.

67.     But for Banner's failure to implement and maintain adequate security measures to protect its patients', health plan members', customers', and employees' personal information and failure to monitor its systems to identify suspicious activity, the personal information of Plaintiff and members of the class would not have been stolen, and they would not be at a heightened risk of identity theft in the future.

68.     Banner's negligence was a substantial factor in causing harm to Plaintiff and members of the class.

69.     As a direct and proximate result of Banner's failure to exercise reasonable care and use commercially reasonable security measures, the personal information of Banner patients, health plan members, customers, and employees was accessed by unauthorized individuals who could use the information to commit identity fraud, medical fraud, or debit and credit card fraud.  Plaintiff and the class face a heightened risk of identity theft in the future.

70.     Members of the class have also suffered economic damages, including the purchase of credit monitoring services they would not have otherwise purchased.

71.    Neither Plaintiff nor other members of the class contributed to the security breach, nor did they contribute to Banner's employment of insufficient security measures to safeguard employees' personal information.

72.    Plaintiff and the class seek compensatory damages and punitive damages with interest, the costs of suit and attorneys' fees, and other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, requests that the Court:

a.    Certify this case as a class action on behalf of the classes defined above;

b.    Award declaratory, injunctive, and other equitable relief as is necessary to protect the interests of Plaintiff and other class members;

c.    Award restitution and damages to Plaintiff and class members in an amount to be determined at trial;

d.    Award Plaintiff and class members their reasonable litigation expenses and attorneys' fees;

e.    Award Plaintiff and class members pre- and post-judgment interest, to the extent allowable; and

f.    Award such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated:    September 7, 2016                Respectfully Submitted,

**SANDERS PHILLIPS GROSSMAN, LLC**

By:    _/s/ Robert Mosier_

Robert A. Mosier

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4

rmosier@thesandersfirm.com
2860 Michelle Drive, Suite 220
Irvine, California 92606
Telephone: (877) 480-9142
Facsimile:  (213) 477-2120

5
6

**GIRARD GIBBS LLP**

7
8
9
10
11
12
13

Eric H. Gibbs (*pro hac vice to be submitted*)
ehg@classlawgroup.com
David M. Berger (*pro hac vice to be submitted*)
dmb@classlawgroup.com
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701

14

*Attorneys for Plaintiff*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT
CASE NO.